A. B. McLavy et al. v. J. B. Jones et al.

Decided January 30, 1903.

1.—Limitation—Recorded Deed—Privity of Title.

Under the statute providing that adverse possession of land for five years under a recorded deed shall give title by limitation, such possession may be based upon a recorded deed to a predecessor in title in privity with whom the possessor holds.

2.—Same—Tacking Possession.

Under the five years statute the possession may be tacked and the title by limitation deraigned through several parties in the completion of the necessary five years, provided every muniment of the record title be duly registered.

3.—Same—Record of Will.

Where the adverse possession is under a recorded deed to one who devised the land to the possessor, it is not necessary that there should be a record of the will.

4.—Same—Order of Probate Court—Possession of Executor.

Where a testator, claiming the land under a duly recorded deed, devised his property in accordance with the statute of descent and distribution, the heir and devisee was entitled to prescribe under the deed without record of the order of the probate court setting apart the land to him in the partition of the estate, and also, in making the five years possession, to tack the possession and payment of taxes by the independent executor pending the settlement of the estate, where the possession and payment of taxes were continuous.

Appeal from the District Court of Walker. Tried below before Hon. J. M. Smither.

*McKinney & Hill,* for appellants.

*Ball, Dean & Humphrey,* for appellees.

GARRETT, Chief Justice.—A. B. McLavy and others sought by this action to recover of J. B. Jones and wife 1920 acres of land situated in Walker County, patented to the heirs of Seaborn A. Mills, deceased. The defendants pleaded not guilty, and the statute of three, five and ten years limitation. There was a trial by jury which resulted in a verdict and judgment in favor of the defendants.

The land in controversy was patented to the heirs of Seaborn A. Mills, October 14, 1868. Seaborn Mills fell with Fannin at Goliad, and the certificate for 1920 acres of land was issued to him as a bounty for his service in the army of the Republic of Texas. He died without issue, leaving as his heirs his father and mother, Moses and Annie Mills. The appellant McLavy put in evidence deeds and powers of attorney from certain heirs of Moses and Annie Mills who were dead, executed during the years of 1883 to 1885, by which the grantors conveyed to him "all land in the State of Texas, which we are entitled to as heirs and devisees of Seaborn A. Mills, deceased."

James Mills was one of the sons of Moses and Annie Mills, and the brother of Seaborn A. Mills, deceased. On August 18, 1868, James Mills executed a deed of conveyance to M. J. McMillan which was

proved for record by Neil McMillan, and filed for record in the office of the county clerk of Walker County on October 27, 1868, by which the said Mills conveyed to the said McMillan all the lands, land warrants, donations, headrights or other certificates (with the exception of a 640 acre donation warrant) that may have been issued to the heirs of Seaborn A. Mills, who fell in —— company in Texas in the struggle for independence." The deed recites "I, the said James M. Mills, as heir at law, having good right to sell said interest, and also a transfer from my fother Moses Mills to the whole interest in the entire estate and claim that he as legal heir was entitled to through the services of my brother in the army of the late Republic of Texas, who fell with —— in the struggle for independence, and I hereby make said transfer a part of this transfer."

M. J. McMillan was the wife of Neil McMillan. The records of the General Land Office show that deeds and proof of heirship were exhibited by Neil McMillan, and patent delivered to him October 14, 1868.

Neil McMillan and his wife, M. J. McMillan, conveyed the land in controversy to C. C. Murray, by deed dated August 8, 1870, filed for record August 11, 1870. Murray went into possession and erected a sawmill thereon, and remained in possession until he sold to Thomas and William Stevens, May 24, 1872, by deed recorded June 11, 1872. There is a break in the record title here, but it appeared from the testimony of C. C. Murray that Thomas and William Stevens conveyed the land to Thornton and Armstrong who continued to operate the sawmill until the land was bought by Byrd Eastham, who purchased the same at a sale made under a mortgage executed by Thornton and wife to D. D. Alston and W. A. Oliphant, with power to them or their agent to sell. The land was regularly sold under the mortgage and bought by Byrd Eastham, February 14, 1876, and a deed was executed to him by Alston and Oliphant by their attorneys, Randolph and McKinney. The deed was duly acknowledged, and was filed for record May 29, 1878, and duly recorded in the record of deeds for Walker County.

Byrd Eastham and Delha Eastham, his wife, were married in 1866, and lived together as man and wife until October 10, 1883, when he died. He left a will, which was duly probated February 5, 1885. By the will Byrd Eastham devised one-half of his estate as community property to his wife. The remainder was devised to his children, the share of each to be delivered as he or she married or became of age, except a tract of land in Travis County and one in Ellis County, which were reserved from sale until all became of age, when they were to be divided equally. Delha Eastham, his wife, was appointed executrix without bond with power to sell real estate, except the land in Travis and Ellis counties, when in her judgment she might think it best to sell. Delha Eastham qualified as executrix of the will.

On August 17, 1886, as shown by an entry in the minutes of the probate court of Walker County, the court approved a report of partition filed in the estate of Byrd Eastham, deceased, by the executrix setting

apart the land in controversy and other property to the defendant Helen M. Jones, who had married, as her share of the estate, except the lands in Travis and Ellis counties, and ordered that the same be recorded; and further ordered that all the right, title and interest of the other heirs, naming them, the minors being represented by a guardian ad litem appointed by the court, be devested out of them, and that the executrix deliver the said property to the said Helen M. Jones, together with the title deeds, as her share of the estate. This decree was never recorded in the record of deeds. The defendant Helen M. Jones is a daughter of Byrd Eastham, deceased.

About March 1, 1886, a tenant entered into possession of the land under a contract with the executrix of Byrd Eastham for the purchase of the timber on 240 acres thereof at $300, and an option to buy the balance of the timber at 50 cents per thousand, and had the 240 acres surveyed. He put a sawmill, houses, stock pens and a garden on the land. This tenant held and claimed the entire tract for the Eastham estate until the land was set apart to the defendant Helen M. Jones, and after that continued to hold it for her and her husband, J. B. Jones, until December 1, 1897. About January 1, 1890, he made a contract with J. B. Jones to purchase the balance of the timber on the survey for $500. He then moved his sawmill to another place on the tract. When he left, December 1, 1897, he sold his sawmill and houses to another person who went into possession as tenant for Jones and wife, and remained in possession of the houses, and operated the mill for about three years. These tenants were authorized to cut and did cut timber from all over the tract promiscuously. All the taxes were paid on the land by Byrd Eastham and his estate from 1880 to 1886, and by the defendants from 1886 to 1897, inclusive. The possession was exclusive and adverse, and of such character as to confer title by limitation.

We are of the opinion that the plea of the statute of five years limitation was sustained by the evidence. Byrd Eastham claimed the land under a deed duly acknowledged and recorded. The deed was dated February 14, 1876, and was filed for record May 29, 1876. Payment of taxes by him was shown to have been made from 1880 to his death, and by his executrix to 1886, when the land was set apart to his heir and devisee, the defendant Helen M. Jones, as a part of her share of the estate. The taxes were shown to have been paid by the defendants from 1886 to 1897 inclusive. Possession under the deed to Byrd Eastham was commenced by his executrix March 1, 1886, and on August 17, 1886, the date of the order of the probate court, it was commenced by the defendants and continued for more than ten years, accompanied by payment of taxes. Helen M. Jones as the heir and devisee of Byrd Eastham could prescribe under the deed to him without record of the order of the probate court. Motley v. Corn, 11 S. W. Rep., 850; Carothers v. Covington, 27 S. W. Rep., 1040; Forbes v. Johnson, 89 Texas, 640; Fossett v. McMahan, 74 Texas, 546; Olive v. Bevil, 55 Texas, 423; Cochrane v. Faris, 18 Texas, 850. The purpose of the

statute requiring possession under a recorded deed is to give notice of the character of the adverse possession, and it must be such as is required in the registration of deeds, and the right of the party in possession to prescribe may be derived from a deed to a predecessor in title in privity with whom he holds. Possession may be tacked, and the title may be deraigned through several parties, in order to give the necessary five years, but every muniment of the record title must be recorded, and the possession must be unbroken, and must be accompanied by the payment of taxes for the requisite period. Porter v. Chronister, 58 Texas, 56; Medlin v. Wilkins, 60 Texas, 418; Cook v. Dennis, 61 Texas, 246; Van Sickle v. Catlett, 75 Texas, 409; Corley v. Matlock, 79 Texas, 306.

Helen M. Jones was the heir and devisee of Byrd Eastham. As such she took the legal title by devise and inheritance; the will disposed of the property in accordance with the statute of descent and distribution, but this fact does not affect the principle involved, as the will is not such a muniment of title as is required by the law of registration to be recorded in the record of deeds. The title did not vest in the executrix but the possession held by her was in trust for the devisees under the will, and her possession can not be considered as a break in the possession, for it was the possession of the devisee and in no sense adverse. Broadly stated, it was held by the Court of Chancery Appeals of Tennessee in the case of Iron and Coal Co. v. Ferguson's Heirs, in an opinion adopted by the Supreme Court, that "The possession by the administrator is not in privity with that of the heirs of the decedent and makes a break in the possession," and Vance's Heirs v. Fisher, 10 Humph., 212, was cited as authority, as also Marr's Heirs v. Gilliam, 1 Coldw., 488, 505. But the decision was rested upon the common law rule that the administrator had no right of control over the real estate of his intestate, holding, that any authority which as such the administrator assumed to exercise over it was an usurped authority, which could communicate no right whatever to the person in whose favor it was exercised. Under the statutes of this State the administrator is entitled to possession of the entire estate, real as well as personal. Rev. Stats., arts. 1867, 1869. The order of court setting apart the land to Helen M. Jones as the devisee of Byrd Eastham was not a deed or a link in the title necessary to be recorded in order to give notice. Helen M. Jones entered into possession of the entire tract of land, and claimed it as the heir and devisee of Byrd Eastham, and by the will and the partitions thereunder she became vested with the entire legal title as held by Byrd Eastham under the deed to him.

Since it appears from the undisputed evidence that the defendant Helen M. Jones has acquired the title to the land in controversy by five years limitation, and that no other judgment could have been rendered than one in favor of the defendants, consideration of the several remaining assignments of error presented by the appellants is unnecessary. The judgment is affirmed.

*Affirmed.*

Writ of error refused.